IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VAUGHN PERRY, | ) | Case No. 1:16CV225 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| ALLEN LAZAROFF, Warden, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Respondent. | ) | OF MAGISTRATE JUDGE |

This matter is before the undersigned on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by Petitioner Vaughn Perry ("Petitioner"), acting *pro se*, on January 25, 2016.[1]  ECF Dkt. #1.  Petitioner seeks relief from his conviction and sentence for murder entered by the Cuyahoga County, Ohio, Court of Common Pleas.  *Id.*  On June 6, 2016, Respondent, Allen Lazaroff ("Respondent"), Warden of the Mansfield Correctional Institution in Mansfield, Ohio, where Petitioner is currently housed, filed a return of writ.  ECF Dkt. #7.  Petitioner did not file a traverse to the return of writ.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice.

I.   **PROCEDURAL BACKGROUND**

A.   **State Trial Court**

On August 21, 2013, the Cuyahoga County Grand Jury indicted Petitioner on the

---

[1]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72 (1988).

following charges:  aggravated murder, in violation of Ohio Rev. Code § 2903.01(A), an

unclassified felony (Count One); murder, in violation of Ohio Rev. Code § 2903.02(B), an

unclassified felony (Count Two); and two counts of felonious assault, in violation of Ohio Rev.

Code § 2903.11(A)(1) and § 2903.11(A)(2), second-degree felonies (Counts Three and Four).

ECF Dkt. #7-1 at 4-5.  Petitioner entered a plea of not guilty to all charges.  *Id*. at 6.

Upon Petitioner's request, the State provided discovery and supplemental discovery.  *Id*.

at 7-17, 20-32.  In addition, on September 17, 2013, Petitioner's counsel requested a referral for

a psychiatric evaluation of Petitioner's competency and sanity, which the trial court granted.  *Id*.

at 33.  On November 5, 2013, defense counsel and the State stipulated to the findings of the

psychiatric expert that Petitioner was competent to stand trial and legally sane when the alleged

crimes were committed.  *Id*. at 34.

On February 7, 2014, the State placed a plea offer on the record.  *Id*. at 35.  On February

10, 2014, pursuant to a negotiated plea agreement, Petitioner withdrew his plea of not guilty and

entered a plea of guilty to the murder charge (Count Two).  *Id*. at 36.  The trial court dismissed

the remaining charges.  *Id*.  However, at Petitioner's sentencing hearing on February 21, 2014,

Petitioner orally moved to withdraw his guilty plea.  *Id*. at 37.  After hearing arguments from

both parties, the trial court denied the motion to withdraw and sentenced Perry to fifteen years to

life in prison.  *Id*.

The Eighth District Court of Appeals of Ohio set forth the following account of

Petitioner's change of plea on direct appeal.  These binding factual findings "shall be presumed

to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by

clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358,

2

360–361 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).

{¶ 8}. . . Perry was represented by three attorneys, and when he entered his [guilty] plea, Perry stated he was "extremely" satisfied with their representation.

{¶ 9} The record shows that Perry received a full Crim.R. 11 hearing at which he unequivocally stated he wanted to enter into the plea. In fact, three days prior to accepting the plea agreement, the trial court and Perry had an extensive conversation regarding whether Perry wanted to take a plea or go to trial. Following the discussion, Perry stated he wanted to speak with his mother about his case. On the day of the plea hearing, Perry stated that he had the opportunity to speak with his mother, and that he wanted to take the plea. Thereafter, the trial court engaged in the requisite and complete Crim.R. 11 colloquy, which included Perry's confirmation that no threats or promises were made to induce him into pleading guilty to the murder charge.

{¶ 10} The record further shows that the trial court held a complete hearing on Perry's motion to withdraw his guilty plea, and that the trial court gave a full and fair consideration of his motion. On the day of sentencing and against the advice of his attorneys, Perry orally moved to withdraw his plea contending that he had been under a lot of stress before the plea, and he was promised a life sentence if he did not take the plea agreement. He further stated that he was "reminded of some evidence," insinuating that he wanted to go to trial to present a defense of self-defense because he did not feel he was "guilty of murder."

{¶ 11} One of Perry's defense attorneys advised the court that all the sentencing possibilities and possible defenses were discussed with Perry prior to him entering into his plea. Additionally, after Perry's attorneys were made aware of his desire to withdraw his plea, his attorneys again explained to him why self-defense would not be a successful defense. Based on that conversation and the facts and evidence of the case, Perry's attorneys felt it was not in Perry's best interest to file the requested motion to withdraw his plea.

{¶ 12} After hearing all the arguments, the trial court denied Perry's motion, noting that both the competency and sanity evaluations determined that Perry did not suffer from any mental disease or defect that would prevent him from understanding the nature of the charges or the objectives and proceedings against him. Further, the evaluations determined that he was able to assist in his defense. The court also noted the two lengthy conversations on the record regarding Perry's decision and desire to enter into the plea agreement.

*State v. Perry*, No. 101141, 2015-Ohio-304, 2015 WL 406953, at *2 (Ohio Ct. App. Jan. 29, 2015).

3

**B.** **Direct Appeal**

Petitioner, through new counsel, filed a timely notice of appeal. *Id*. at 39. On September 9, 2014, the appellate court remanded to the trial court to correct its sentencing entry to comply with Ohio law. *Id*. at 86. The trial court issued a new sentencing entry on September 12, 2014, which did not alter the terms of Petitioner's conviction or sentence. *Id*. at 38.

In his appellate brief, Petitioner asserted the following two assignments of error:

1.   The trial court erred when it denied Appellant's motion to withdraw guilty plea, where said denial was an abuse of discretion.

2.   Defense counsel's failure to file a motion to withdraw the Appellant's guilty plea, despite Appellant's instructions that they do so, constituted ineffective assistance of counsel.

*Id*. at 91. On January 29, 2015, the state appellate court affirmed Petitioner's conviction and sentence. *Perry*, 2015 WL 406953, at *4; ECF Dkt. #7-1 at 122.

On March 15, 2015, Petitioner filed a timely *pro se* notice of appeal in the Ohio Supreme Court. ECF Dkt. #7-1 at 124. In his memorandum in support of jurisdiction, Petitioner asserted the following two propositions of law:

1.   The trial court erred when it denied Appellant's motion to withdraw guilty plea, where said denial was an abuse of discretion.

2.   Defense counsel's failure to file a motion to withdraw the Appellant's guilty plea, despite Appellant's instructions that they do so, constituted ineffective assistance of counsel.

*Id*. at 134, 136. The Ohio Supreme Court declined to accept jurisdiction on June 3, 2015. *Id*. at 175.

**C.** **Post-Conviction Proceedings**

Meanwhile, on August 14, 2014, Petitioner filed a *pro se* petition to vacate or set aside

4

judgment of conviction or sentence in the trial court.  *Id*. at 176.  He raised one claim for relief:

> Ineffective assistance of counsel – My attorneys failed to contact and interview witnesses on my behalf.

*Id*. at177.  Petitioner filed a motion for appointment of counsel, which the trial court denied.  *Id*. at 179-83.  The State moved for summary judgment on Petitioner's petition.  *Id*. at 184-89. Petitioner did not oppose the State's motion and the trial court granted the motion and dismissed the petition on December 1, 2014.  *Id.* at 204.  A review of the state appellate court and Ohio Supreme Court online dockets revealed that Petitioner did not appeal the trial court's decision.

## II.  FEDERAL HABEAS CORPUS PETITION

Petitioner, acting *pro se*, filed a § 2254 federal habeas corpus petition on January 25, 2016.  ECF Dkt. #1.  He asserts the following two grounds for relief:

1.  Ineffective Assistance of Counsel: [C]ounsel wouldn't file a motion to withdraw guilty plea even though directed by[Petitioner] to do so.  Counsel failed to interview witnesses on [Petitioner's] behalf even though directed by [Petitioner] to do so, persuant [*sic*] to the [S]ixth [A]mendment to the U.S. [C]onstitution.

2.  Abuse of Discretion:  The trial court denied [Petitioner's] verbal motion to withdraw guilty plea, where said denial was an abuse of discretion, thus violating [Petitioner's] due process rights under the [Fifth] and [Fourteenth] [A]mendments to the U.S. [C]onstitution.

*Id*. at 5-6.  On June 6, 2016, Respondent filed an answer/return of writ.  ECF Dkt. #7.  Petitioner did not file a traverse to the return of writ.

## III.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning

5

procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1).  Respondent does not challenge the timeliness of Petitioner's habeas petition.

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878,

6

881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by:  (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031–32 (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden ... of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218–19 (1950), overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501

7

U.S. 722, 748 (1991).

    **C.**    <u>**Procedural Default**</u>

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991). Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman*, 501 U.S. at 729–30;

8

*Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d at 313–14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman,* 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

IV.     **STANDARD OF REVIEW**

   If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed the instant § 2254 federal habeas corpus petition well after the AEDPA's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112 (1998).  Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

   The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

10

529 U.S. 362, 412–13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id*.  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*.; *see also Bailey v. Mitchell*, 271 F.3d 652, 655–56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

A.     Decisions of lower federal courts may not be considered.

B.     Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.     The state court decision may be overturned only if:

    1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal]; or

    2.     The state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent'; or

    3.     'The state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case'; or

    4.     The state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.     Throughout this analysis the federal court may not merely apply its own

11

views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655–56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine*, 986 F.2d at 1514.  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28

U.S.C. § 2254(e)(1).

## V.     ANALYSIS

### A.     Petitioner's Second Ground for Relief: Withdrawal of Guilty Plea

For purposes of clarity, the undersigned first will address Petitioner's second ground for relief, in which he argues that the trial court violated his federal constitutional due process rights when it denied his motion to withdraw his guilty plea.  ECF Dkt. #7 at 6.  Petitioner provides no legal authority or argument to support this claim in his petition and did not file a traverse.

Petitioner challenged the trial court's ruling on his motion to withdraw his guilty plea as an abuse of discretion in state court on direct appeal, relying exclusively on Ohio law.  The last state court to address the claim was the state appellate court, which opined:

> {¶ 4} In his first assignment of error, Perry contends that the trial court erred when it denied his motion to withdraw his guilty plea. Specifically, he claims that the trial court failed to consider his profession of innocence, the timeliness of his motion, and the judicial standard that such motions should be liberally granted.

> {¶ 5} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

> {¶ 6} In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). It is well established, however, that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable legitimate basis for the withdrawal of the plea." *Id.* at paragraph one of the syllabus.

> {¶ 7} The decision to grant or deny a presentence motion to withdraw is within the trial court's discretion. Id. at paragraph two of the syllabus. Absent an abuse of discretion, the trial court's decision must be affirmed. *Id.* at 527, 584 N.E.2d 715. An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A trial court does not abuse its discretion in denying a motion to withdraw the plea where a defendant was (1) represented by

13

competent counsel, (2) given a full Crim.R. 11 hearing before he entered a plea, (3) given a complete hearing on the motion to withdraw, and (4) the record reflects that the court gave full and fair consideration to the plea withdrawal request. *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), paragraph three of the syllabus. This court has also set forth additional factors to consider, including that (1) the motion was made in a reasonable time; (2) the motion stated specific reasons for withdrawal; (3) the record shows that the defendant understood the nature of the charges and possible penalties; and (4) the defendant had evidence of a plausible defense. *State v. Pannell*, 8th Dist. Cuyahoga No. 89352, 2008–Ohio–956, ¶ 13, citing *State v. Benson*, 8th Dist. Cuyahoga No. 83178, 2004–Ohio–1677.

{¶ 8} In applying these factors, we find that the trial court did not abuse its discretion in denying Perry's motion to withdraw his guilty plea. Perry was represented by three attorneys, and when he entered his plea, Perry stated he was "extremely" satisfied with their representation.

{¶ 9} The record shows that Perry received a full Crim.R. 11 hearing at which he unequivocally stated he wanted to enter into the plea. In fact, three days prior to accepting the plea agreement, the trial court and Perry had an extensive conversation regarding whether Perry wanted to take a plea or go to trial. Following the discussion, Perry stated he wanted to speak with his mother about his case. On the day of the plea hearing, Perry stated that he had the opportunity to speak with his mother, and that he wanted to take the plea. Thereafter, the trial court engaged in the requisite and complete Crim.R. 11 colloquy, which included Perry's confirmation that no threats or promises were made to induce him into pleading guilty to the murder charge.

{¶ 10} The record further shows that the trial court held a complete hearing on Perry's motion to withdraw his guilty plea, and that the trial court gave a full and fair consideration of his motion. On the day of sentencing and against the advice of his attorneys, Perry orally moved to withdraw his plea contending that he had been under a lot of stress before the plea, and he was promised a life sentence if he did not take the plea agreement. He further stated that he was "reminded of some evidence," insinuating that he wanted to go to trial to present a defense of self-defense because he did not feel he was "guilty of murder."

{¶ 11} One of Perry's defense attorneys advised the court that all the sentencing possibilities and possible defenses were discussed with Perry prior to him entering into his plea. Additionally, after Perry's attorneys were made aware of his desire to withdraw his plea, his attorneys again explained to him why self-defense would not be a successful defense. Based on that conversation and the facts and evidence of the case, Perry's attorneys felt it was not in Perry's best interest to file the requested motion to withdraw his plea.

14

{¶ 12} After hearing all the arguments, the trial court denied Perry's motion, noting that both the competency and sanity evaluations determined that Perry did not suffer from any mental disease or defect that would prevent him from understanding the nature of the charges or the objectives and proceedings against him. Further, the evaluations determined that he was able to assist in his defense. The court also noted the two lengthy conversations on the record regarding Perry's decision and desire to enter into the plea agreement.

{¶ 13} Based on Perry's arguments in support of his motion to withdraw his plea and the record before this court, Perry has set forth no legitimate basis for the withdrawal of his plea. The record supports the conclusion that Perry's decision to plead guilty to murder was voluntarily, knowingly, and intelligently made. Accordingly, we find that the court acted within its discretion when it denied Perry's motion. The first assignment of error is overruled.

*Perry*, 2015 WL 406953, at *1-2.

### 1.    <u>Cognizability</u>

Respondent first argues that this claim is not cognizable on federal habeas review.  ECF Dkt. #7 at 23-24.  The undersigned agrees.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

There is no federal due process right to seek to withdraw a guilty plea.  *See, e.g., Hynes v. Birkett*, 526 Fed. Appx. 515, 521 (6th Cir. 2013); *Dickey v. Warden, Lebanon Corr. Inst.*, No. 1:08cv819, 2010 WL 92510, at **7–8 (S.D. Ohio Jan. 6, 2010) (citing cases); *Breeden v. Beightler*, No. 3:06cv3056, 2008 WL 1995367, at *13 (N.D. Ohio May 6, 2008) (citing *United States ex rel. Scott v. Mancusi*, 429 F.2d 104, 109 (2d Cir. 1970)).  Generally, therefore, a federal

15

habeas court "lacks authority to adjudicate a claim that the state court improperly denied a motion to withdraw a guilty plea." *Artiaga v. Money*, No. 3:04cv7121, 2007 WL 928640, at *2 (N.D. Ohio Mar. 27, 2007); *see also Xie v. Edwards*, 35 F.3d 567, 1994 WL 462143, at *2 (6th Cir. Aug. 25, 1994) (unpublished) (whether trial court abused discretion in denying motion to withdraw plea is question of state law); *Gibson v. Warden, Hocking Correct. Facility*, No. 1:10cv8, 2011 WL 1429099, at *5 (S.D. Ohio Feb. 23, 2011) ("The decision whether to permit a defendant to withdraw a guilty plea is committed to the trial court's discretion, which generally is not a basis for federal habeas relief"); *Alt v. Eppinger*, No. 1:14cv100, 2015 WL 3489867, at *7-8 (N.D. Ohio June 2, 2015) (holding that the petitioner's claim of "denial of due process and abuse of discretion" by the trial court in denying the petitioner's motion to withdraw her guilty plea without a hearing did not state a "cognizable ground for habeas relief"); *Cline v. Kelly*, No. 1:09cv859, 2010 WL 1006529, at *5 (N.D. Ohio Mar. 16, 2010) (finding that the magistrate judge had "correctly concluded" that "whether a state court grants a motion to withdraw a guilty plea is a matter of state law not cognizable on federal habeas review").  Thus, to the extent that Petitioner complains of the state court's "abuse of discretion" or argues that the state court improperly denied his motion to withdraw his guilty plea under Ohio law, the claim does not provide grounds for federal habeas relief.

However, state-court rulings on matters of state law may "rise to the level of due process violations [if they] 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  The offense must be "so egregious that [it] result[ed] in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th

16

Cir. 2003).  Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'"  *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted).  Courts, therefore, "'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'"  *Id.* (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

The issue of whether a state trial court's denial of a motion to withdraw a guilty plea implicates constitutional concerns turns on whether the plea, which the petitioner sought to withdraw, was knowing and voluntary or, in other words, "represents a voluntary and intelligent choice among the alternative courses of action open to [him]."  *Salter v. Tambi*, No. 1:04cv1682, 2006 WL 2360924, at *7 (N.D. Ohio Aug. 15, 2006) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  The ultimate question is whether the guilty plea was made voluntarily and intelligently.  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  To enter a plea voluntarily and intelligently, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea.  *Brady v. United States*, 397 U.S. 742, 748 (1970); *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).  Because the decision whether or not to plead guilty ultimately rests with the defendant, defense counsel "must ensure that [his] client's decision is as informed as possible."  *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002).

The Sixth Circuit has relied on the standard established in *Brady v. United States*, 397 U.S. 742, 755 (1970), to determine whether a guilty plea is "fundamentally fair" where a habeas petitioner challenges the trial court's discretionary denial of a motion to withdraw the plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including
> the actual value of any commitments made to him by the court, prosecutor, or his

17

own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Carwile v. Smith*, 874 F.2d 382, 385 (6th Cir. 1989) (quoting *Brady*, 397 U.S. at 755) (internal quotation marks omitted).

The state generally satisfies its burden of showing that the plea was intelligent and voluntary by producing a transcript of the state-court proceedings. *McAdoo*, 365 F.3d at 494; *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. *Garcia*, 991 F.2d at 326–327 (citing *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir. 1989). If the transcript is inadequate to show that a plea was voluntary and intelligent, the presumption of correctness no longer applies. *Id*. at 327. "The petitioner must overcome a heavy burden if this court is to overturn state court findings." *Id*. (citing *Parke v. Raley*, 506 U.S. 20 (1992), and *Dunn*, 877 F.2d 1275). "Solemn declarations in open court" made by a criminal defendant during a plea hearing "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "Thus, a criminal defendant's statement on the record 'that he had not been coerced or threatened into pleading guilty . . . is strong evidence of the voluntariness of his plea.'" *McFarland. v. Shewaiter,* No. 1:10cv98, 2011 WL 7061924, at *16 (N.D. Ohio Dec. 9, 2011) (quoting *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991)).

Here, Petitioner cannot demonstrate that the trial court's denial of his motion to withdraw his guilty plea was in error, much less an error so egregious as to violate fundamental fairness. A review of the transcripts of the following state trial-court hearings revealed that no circumstances forbidden by *Brady* were present during: the February 7, 2014 hearing , held a week before the

18

trial was set to begin, and at which the court discussed the State's plea offer with Petitioner and defense counsel; the February 10, 2014 hearing, at which Petitioner entered his guilty plea; and the February 21, 2014 hearing, at which Petitioner himself orally moved to withdraw his guilty plea. *See* ECF Dkt. #7-2 at 17-78.

During the February 7, 2014 hearing, the trial court carefully explained to Petitioner the charges against him, the possible penalties if convicted, and the consequences of accepting the plea offer. *Id*. at 20-24. The judge further explained to Petitioner that he was being represented by competent counsel who had conducted a significant amount of discovery over several months. ECF Dkt. #7-2 at 23-24. *See also* ECF Dkt. #7-1 at 7-17, 34. The judge stated:

> The Court:  Well, we have had, just for the record, we've had numerous pretrials in this case, your lawyers meeting with the prosecutor on many occasions. . . .
>
> So your lawyers are working extremely hard on your behalf. I can tell you that. Because this case, I feel, is set for pretrial once a week, once every couple weeks, so they've been here working very hard for you. You might not know all the times they've been in court because you can't be here. So I feel that there isn't any discovery outstanding, is there?
>
> [Defense Counsel]:    Not that we're aware.

ECF Dkt. #7-2 at 30. Defense counsel then told the court that there was minor outstanding discovery, but the judge noted that it was not "helpful" to Petitioner. *Id*. at 30-33. Counsel assured the judge that they were "prepared and if Mr. Perry wants us to try this case, there's nothing else we're aware of outstanding and there's certainly not any other witnesses and we're ready to go forward on Wednesday." *Id*. at 31. When Petitioner refused to either accept the plea offer or affirm that he wished to proceed to trial, the court gave him additional time to consider the offer and talk to his mother. *Id.* at 35-36.

19

At the February 10, 2014 hearing, the court conducted a full and fair colloquy with Petitioner regarding his guilty plea, including his constitutional rights, the nature of the charges, the effect of the plea, and the maximum penalties that may be imposed.  *Id*. at 40-45.  Petitioner assured the judge that he understood the plea agreement, had not been induced by any threats or promises, and was "extremely" satisfied with his counsel.  *Id*. at 41.  There is nothing in the transcript to indicate that Petitioner was incompetent "or otherwise not in control of his mental faculties."  *Brady*, 397 U.S. at 755.

During the February 21, 2014 hearing, Petitioner moved to withdraw his guilty plea, and the court conducted a full hearing on the matter.  ECF Dkt. #7-2 at 47-65.  Petitioner explained to the court that he wished to withdraw his plea because he "was under a lot of stress" when he entered the plea, his attorney "actually promised" he would get a life sentence if he did not enter the plea, and he was "reminded of some evidence that [he] hadn't previously pursued . . . ."  *Id*. at 48-50.  The judge noted that Petitioner: had undergone a psychiatric evaluation and been found sane and able to understand the proceedings against him and assist in his defense; had engaged in two prior "lengthy conversations" with Petitioner on the record about the terms and consequences of the plea agreement; that Petitioner was "pretty adamant that [he] wanted to plead" guilty; and that Petitioner had assistance from competent and engaged counsel and ample time in which to decide how to plead, but had never previously expressed to the court a desire to go to trial.  *Id*. at 49, 53-54, 60-62.  Finally, defense counsel described their efforts on Petitioner's behalf:

> We had . . . lengthy discussions with Mr. Perry prior to the plea . . .  We gave him the options on the sentencing.  We did discuss the possibility of life without parole; that's one of the options the Court has.  And we discussed all the possible defenses.

We're aware of what occurred here.  We've got full discovery from the State, all the medical information, all the physical evidence; and we gave him what we felt was our best advice. . . .

And then I received a text . . . indicating that our client wanted to withdraw his plea.  We then arranged to meet with him yesterday at the jail.  We, again, went over everything; again, explained to him why the defense of self-defense would be almost impossible in this case.  And he continued to ask us to file a motion to withdraw his plea.  And I – we all felt that despite what his request was that the state of the evidence, the state of the case was such that we couldn't, in his best interest, file a motion to withdraw the plea.

. . . Had he said before the plea that he's not pleading, he wants to try the case, we would have been in trial on that Wednesday.  There's no question about it.  He was aware of it.

So there was no question in my mind that he was thinking clearly at that point.  And I think all of us would agree with that.

*Id*. at 64-66.

Accordingly, the record supports the state appellate court's conclusion that Petitioner's guilty plea was intelligent and voluntary, and Petitioner has failed to show that the trial court's denial of his motion to withdraw that plea, or the state appellate court's affirmance of that decision, was fundamentally unfair.   Petitioner had competent counsel who performed a substantial amount of work on his defense.  The record shows that Petitioner was fully aware of the consequences of his guilty plea, as he had been informed numerous times by both defense counsel and the trial court about the nature of the offenses, the possible sentences, and his constitutional rights.  Petitioner does not contend that his guilty plea was procured by any threat, and his claim that his counsel induced him to plead guilty with false representations about the sentence he would receive if he went to trial was unsupported.  Petitioner, therefore, cannot show that the state courts violated federal constitutional rights, and this claim is not cognizable on

21

federal habeas review.

### 2. **Procedural default**

Continuing, Respondent argues that this claim is procedurally defaulted because Petitioner did not "fairly present" it to state courts as a federal constitutional claim. ECF Dkt. #7 at 26. Respondent asserts that Petitioner relied only on Ohio criminal procedural rules and case law in his state-court briefs. *Id.*; *see also* ECF Dkt. #71 at 97-99. In fact, Respondent notes that in the Ohio appellate court case upon which Petitioner relies most heavily, *State v. Griffin*, 141 Ohio App. 3d 551, 2001-Ohio-3203, 752 N.E.2d 310, the court specifically distinguished Ohio Criminal Procedural Rule 32.1 from its federal counterpart. *Id.*; *see Griffin*, 141 Ohio App. 3d at 553, 752 N.E.2d at 312. The state appellate court similarly relied only on Ohio law in its analysis of this claim. *See Perry*, 2015 WL 406953, at *1-2.

The undersigned agrees that Petitioner did not fairly present this claim to state courts, and it is procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (internal citations omitted) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ."); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

As Petitioner's second ground for relief is both not cognizable on federal habeas review and procedurally defaulted, the undersigned recommends that it be dismissed.

### B. **Petitioner's First Ground for Relief: Ineffective Assistance of Counsel**

In his first ground for relief, Petitioner argues that he was denied his Sixth Amendment

22

right to the effective assistance of counsel when his trial counsel: (1) failed to file a motion to withdraw his guilty plea; and (2) failed to interview witnesses on his behalf.  ECF Dkt. #1 at 5. Petitioner again provides no legal authority or argument to support these claims.

The Supreme Court of the United States has long recognized that the Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock principle in our justice system." *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012); *see also Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963).  In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court announced a two-prong test for habeas claims of ineffective assistance of counsel.  First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland,* 466 U.S. at 687.  Second, the petitioner must show that he or she was prejudiced by counsel's errors. To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

"*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland,* 466 U.S. at 689-90).  The Supreme Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so."  *Harrington v. Richter,* 562 U.S. 86, 105 (2011).

### 1.    Failure to File a Motion to Withdraw Guilty Plea

Petitioner raised his ineffective-assistance claim based on his trial counsel's alleged failure to file a motion to withdraw his guilty plea on direct appeal in state court, where it was

adjudicated on the merits.  *Perry*, 2015 WL 406953, at *3-4.  Respondent argues this claim lacks

merit.  ECF Dkt. #7 at 21-22.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court of the United States addressed

challenges to guilty pleas based on ineffective assistance of counsel.  The Supreme Court held

that the *Strickland* standard applies.  *Id*. at 58.  To prove deficiency in such cases, "a defendant

who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent

character of the guilty plea by showing that the advice he received from counsel was not within

the range of competence demanded of attorneys in criminal cases."  *Id*. at 56-58 (internal

citations omitted).  To prove prejudice in the context of a challenged guilty plea, the petitioner

must show "that there is a reasonable probability that, but for counsel's errors, [the petitioner]

would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.

The state appellate court, the last state court to review this claim, reasoned:

{¶ 14} The record shows that prior to sentencing Perry expressed to his attorneys
his desire to withdraw his plea. After meeting with him, Perry's attorneys felt that
despite his request and considering all the evidence, it was not in Perry's best
interest to file a motion to withdraw his plea. In his second assignment of error,
Perry contends that his trial counsel was ineffective for failing to file a written
motion to withdraw guilty plea.

{¶ 15} We review a claim of ineffective assistance of counsel under the two-part
test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984). Under *Strickland*, a reviewing court will not deem counsel's
performance ineffective unless a defendant can show his lawyer's performance fell
below an objective standard of reasonable representation and that he was
prejudiced by the lawyer's deficient performance. *State v. Bradley*, 42 Ohio St.3d
136, 538 N.E.2d 373 (1989), paragraph one of the syllabus. To show prejudice, a
defendant must prove that, but for his lawyer's errors, a reasonable probability
exists that the result of the proceedings would have been different. *Id*. at
paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be
highly deferential. *State v. Sallie*, 81 Ohio St.3d 673, 693 N.E.2d 267 (1998).

24

{¶ 16} A defendant receives ineffective assistance of counsel when his trial counsel "fails to act on his request to withdraw his plea when the possibility that he would have been allowed to withdraw his plea is not insubstantial." *State v. Strutton*, 62 Ohio App.3d 248, 252, 575 N.E.2d 466 (2d Dist.1988). This court has found trial counsel not ineffective when the defendant does not set forth a "reasonable or legitimate basis for the withdrawal of his plea." *State v. Jones*, 8th Dist. Cuyahoga Nos. 68284, 68285, 68286, 68287, 68288, 1995 Ohio App. LEXIS 3463, *19 (Aug. 24, 1995); *State v. Drake,* 8th Dist. Cuyahoga No. 93761, 2010–Ohio–1065, ¶ 16 (counsel not ineffective for failing to file motion to withdraw because defendant could not demonstrate prejudice). *See also State v. Carr*, 10th Dist. Franklin No. 01AP–849, 2002–Ohio–1314 (counsel not ineffective for failing to abide by client's request to file a motion to withdraw plea because counsel was acting in client's best interest by refusing to request vacating a reasonable plea bargain given the evidence).

{¶ 17} In *State v. Jones,* 2d Dist. Clark No.98–CA–16, 1994 Ohio App. LEXIS 5226 (Oct. 24, 1994), the Second District held that counsel was not ineffective for stating to the court that withdrawal of the plea was not in his client's best interest. The court concluded that the defendant was not prejudiced by counsel's alleged passive representation because the defendant failed to provide a legitimate reason to permit a withdrawal of his plea. The court also noted that even where some criminal defendants have been required to present their withdrawal motions without the benefit of counsel, courts have not found a Sixth Amendment violation. *Id.* at *8, citing *State v. Shufflebean*, 4th Dist. Athens No. 97 CA 40, 1998 Ohio App. LEXIS 2766, 1998 WL 319380 (June 18, 1998).

{¶ 18} In this case and much like the cases cited, Perry's reasons for withdrawing his plea were neither legitimate nor served as a reasonable basis for the withdrawal of his plea. The record clearly demonstrates that Perry was not pressured into entering into the plea agreement because the trial court continued the case for Perry to discuss the case with his mother. Perry stated that no promises or threats were made to induce him to accept the plea. Furthermore, Perry was fully and completely apprised of the maximum penalties he faced. Finally, trial counsel stated that they discussed with Perry that self-defense was problematic. The state maintained that a self-defense instruction was not possible based on the evidence of the case. Therefore, we find that counsel's performance in failing to file the requested motion to withdraw Perry's guilty plea was not deficient.

{¶ 19} Even if we found that counsel's performance was deficient, Perry could not satisfy his burden of proving that there is a reasonable probability that the outcome could have been different had his attorneys filed the motion to withdraw. The trial court afforded Perry the opportunity to argue his oral motion and state the basis for his request, even without a written motion to withdraw his plea. As

25

> previously stated, the trial court conducted a hearing on the oral motion to withdraw the plea and gave full and fair consideration to Perry's arguments prior to denying his motion.

*Perry*, 2015 WL 406953, at *3-4.

Petitioner has failed to demonstrate that the advice he received from counsel was not within the range of competence of attorneys demanded in criminal cases. *See Hill*, 472 U.S. at 56-58. Further, Petitioner has failed to demonstrate prejudice by showing a reasonable probability that he would not have pleaded guilty and would have gone to trial but for errors made by his counsel. *Id.* at 59. Additionally, as Petitioner's guilty plea was voluntary and intelligent, even if counsel, rather than Petitioner, had moved to withdraw the plea, it is unlikely the result would have been different. The trial court conducted a hearing on Petitioner's oral motion to withdraw, at which Petitioner stated his grounds for withdrawal, and the court denied the motion based on its finding that Petitioner had no legitimate basis for the request. *See* ECF Dkt. #7-2 at 53-54. Nothing in the record suggests that counsel would have been any more successful in obtaining permission to withdraw the plea than Petitioner.

Accordingly, the state appellate court's decision finding no ineffective assistance based on defense counsel's failure to file a motion to withdraw Petitioner's guilty plea was neither contrary to, nor an unreasonable application of, *Strickland* and its progeny.

## 2. Failure to Investigate / Interview Witnesses

Petitioner's second ineffective-assistance claim is based on his trial counsel's alleged failure to interview witnesses. ECF Dkt. #1 at 5. Respondent argues this claim is procedurally defaulted because Petitioner did not raise it on direct appeal and did not fairly present it to state courts in post-conviction proceedings. ECF Dkt. #7 at 18-19. Again, the undersigned agrees.

Petitioner raised this ineffective-assistance claim in a *pro se* post-conviction petition in the state trial court.  *See* ECF Dkt. #7-1 at 177.  No case law was cited and Petitioner provided no argument, but instead attached an affidavit from Larena Lee.  *Id*. at 182.  In the affidavit, Ms. Lee averred:

1.   I was arrested and my kids were taken away and was coerced into saying thing[s] that were not true about Vaughn Perry.

2.   [M]e and Maurice Jackson were not involved in a relationship sexual or otherwise and Vaughn was aware of that fact.

3.   Maurice Jackson was not protecting [me] from Vaughn Perry.  He attacked Vaughn with a knife.

4.   I did not see the alleged crime of murder.  Vaughn [protected] himself against Maurice Jackson.

*Id*.  The State moved to dismiss the petition on summary judgment.  *Id*. at 184-89.  Petitioner did not oppose the State's motion, and the trial court granted the motion and dismissed the petition. *Id.* at 204.  Petitioner did not appeal that judgment.

Accordingly, Petitioner did not fully exhaust the claim by giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To provide state courts the necessary "opportunity," petitioners must "fairly present" federal constitutional claims "in each appropriate state court" before seeking relief in the federal courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  Petitioner did not meet this requirement because he presented this claim only to the trial court and not to the state court of appeals or Ohio Supreme Court.

27

Petitioner's ineffective-assistance claim, therefore, is procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (internal citations omitted) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ."); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

Petitioner states in his petition that he did not appeal the trial court's decision because he "was unaware of right to appeal post relief petition result."  ECF Dkt. #1 at 6.  However, Petitioner's ignorance of Ohio procedural rules governing post-conviction review does not excuse the procedural default.  It is well-established that "[c]ause for procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule."  *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (emphasis original) (citations and internal quotations omitted); *Murray v. Carrier*, 447 U.S. 478, 488 (1986).  Petitioner offers no other cause for the default and does not claim that he is actually innocent of the offense.  Therefore, Petitioner's first ground for relief is subject to procedure default, and the undersigned recommends that it be dismissed.[2]

---

[2]  Even if this claim were not procedurally defaulted, it would fail.  Under *Strickland,* defense counsel must "conduct investigation at least to the extent necessary to determine that no further investigation is necessary."  *Storey v. Vasbinder*, 657 F.3d 372, 390 (6th Cir. 2011).  However, the *Strickland* Court itself stated that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690–91.  Petitioner's claim is entirely speculative and unfounded.  Petitioner has presented no evidence that additional witnesses existed for counsel to interview.  As noted above, counsel represented to the trial court on the record that they had conducted "full

## VI.    CONCLUSION AND RECOMMENDATION

For the above reasons, the undersigned RECOMMENDS that the Court DISMISS

Petitioner's federal habeas corpus petition in its entirety with prejudice.


DATE: November 4, 2016                      */s/  George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).

---

discovery" and could find no more witnesses. *See* ECF Dkt. #7-2 at 31, 65.  Nor has Petitioner shown that any witness counsel may have overlooked would have provided exculpatory testimony strong enough to have assured his acquittal.  The only support in the record for Petitioner's claim is Ms. Lee's post-conviction affidavit.  But there is nothing in the record that shows Petitioner's counsel did not interview Ms. Lee.  Again, defense counsel conducted a substantial amount of discovery in Petitioner's case, and it is unlikely they would not have interviewed Ms. Lee, a key witness.  But even if counsel did fail to interview Ms. Lee, Petitioner cannot prove that had she testified at trial, she would have provided testimony different from the account of the incident she gave to police and consistent with her post-conviction affidavit, written a year after the murder took place.  This claim is without merit.